# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 14, 2012

No. 11-40056

Lyle W. Cayce
Clerk

In the Matter of: YDALIA RODRIGUEZ,

Debtor

---

YDALIA RODRIGUEZ; MARIA ANTONIETA HERRERA; DAVID HERRERA; LUCY MORENO; ALFONSO MORENO,

Plaintiffs - Appellees

v.

COUNTRYWIDE HOME LOANS, INCORPORATED,

Defendant - Appellant

---

Appeal from the United States District Court for
the Southern District of Texas

---

Before GARZA, DENNIS, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge.

Countrywide appeals a class certification order of the bankruptcy court. We AFFIRM. Named plaintiffs Ydalia Rodriguez, Maria Antonieta and David Herrera, and Lucy and Alfonso Moreno are former chapter 13 debtors with mortgages serviced by Countrywide Home Loans, Inc. ("Countrywide"). The Plaintiffs each cured their pre-petition mortgage arrearages, completed their chapter 13 plans, and received a discharge from their bankruptcy cases. They allege that after they emerged from bankruptcy, Countrywide threatened to

No. 11-40056

foreclose on their homes if they did not pay fees that were charged while their bankruptcy cases were still pending. Plaintiffs claim that these fees were unreasonable, unapproved, and undisclosed under Federal Rule of Bankruptcy Procedure 2016(a).[1] Additionally, they claim that Countrywide misapplied mortgage payments to satisfy some of the unauthorized fees, instead of properly applying the payments as they were intended—to satisfy the amount due each month on their mortgages. Plaintiffs sought (1) a declaratory judgment that Countrywide's conduct violated the Bankruptcy Code, (2) an injunction preventing Countrywide from trying to collect undisclosed fees, (3) compensatory damages (including disgorgement and restitution), (4) punitive damages, and (5) sanctions from the bankruptcy court.

The bankruptcy court found that Countrywide "admits that it misapplied plan payments and charged fees without first receiving Court approval" but Countrywide contended that (1) the misapplications and charges were sporadic

---

[1] Fed. R. of Bankr. P. 2016(a) reads:

Application for Compensation or Reimbursement. An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.

No. 11-40056

rather than part of a regular practice and (2) the fees did not violate Rule 2016(a). In response, the bankruptcy court held that, "'[u]nder the plain language of Rule 2016, a mortgage lender must file a Rule 2016 application before collecting any reimbursable fees and costs while a chapter 13 case remains pending.'" *Rodriguez v. Countrywide Homes Loans, Inc.* (*In re Rodriguez*), 421 B.R. 356, 372 (Bankr. S.D. Tex. 2009). The bankruptcy court concluded that Rule 2016(a) applied to fees that were "assessed during bankruptcy but not collected until post-bankruptcy," rejecting Countrywide's arguments.

Plaintiffs moved for class certification of both a Rule 23(b)(2) class and also a Rule 23(b)(3) class on December 2, 2009. *See* Fed. R. Civ. P. 23. After a three-day hearing, the bankruptcy court denied Rule 23(b)(2) as well as Rule 23(b)(3) class certification for Plaintiffs' damages claims because they did not satisfy Rule 23(b) but granted narrow class certification for Plaintiffs' injunctive relief claim. In doing so, the bankruptcy court determined that the proposed injunction would state that, "Countrywide shall not collect or attempt to collect any fees that (1) were incurred during the pendency of a class member's bankruptcy case, (2) are governed by Rule 2016(a), and (3) have not yet been authorized pursuant to Rule 2016(a)." It also exercised its "great discretion in certifying and managing an action," *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502 (5th Cir. 2004) (citation and internal quotation marks omitted), and redefined the class, narrowing it to only include individuals:

> (a) who owed funds on a Countrywide serviced note as of February 26, 2008;
> (b) who have not fully paid the relevant mortgage note, fees, or costs owed to Countrywide, its successors and assigns;
> (c) who filed a chapter 13 proceeding in the United States Bankruptcy Court for the Southern District of Texas on or before October 15, 2005 and have confirmed chapter 13 plans that treated mortgages serviced by Countrywide; and

3

No. 11-40056

(d) as to whom Countrywide has assessed a fee or cost governed by Rule 2016(a), attributable to a time after the filing of a bankruptcy petition and before the date on which the individual received a chapter 13 discharge, unless such fee or cost was approved in a Bankruptcy Court order.

The narrowed class definition excluded those who would not be able to benefit from redeeming time because they either had already paid their mortgages in full or no longer had a mortgage serviced by Countrywide. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004) (citing *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir. 2000)) (requiring that "most of the class" seeking injunctive relief be able to benefit from the injunction).

On appeal, Countrywide challenges the bankruptcy court's class certification order, arguing that (1) the grant of class certification is precluded by Rule 23(b) and our holding in *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*) ("*Wilborn II*"),[2] 609 F.3d 748 (5th Cir. 2010)); (2) the bankruptcy court did not define an ascertainable class; and (3) the bankruptcy court abused its discretion in failing to reconsider class certification after a consent judgment in the United States District Court for the Central District of California ("the consent judgment") rendered injunctive relief in the instant case moot.

I. Class Certification

We review a denial of class certification for abuse of discretion and legal questions implicated by the denial de novo. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 227 (5th Cir. 2009); *Vizena*, 360 F.3d at 502. "'Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the [trial] court's inherent power to

---

[2] When citing *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), we cite the bankruptcy court's decision, *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*) ("*Wilborn I*"), 404 B.R. 841, 860 (Bankr. S.D. Tex. 2009), *reversed on class certification grounds* by *Wilborn II*, 609 F.3d 748 (quoting *Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007)), as "*Wilborn I*," and our reversal of that decision as "*Wilborn II*."

manage and control pending litigation.'" *Monumental Life*, 365 F.3d at 414 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998)).

Parties seeking to certify a class must satisfy Fed. R. Civ. P. 23(a)'s four threshold requirements[3] and the requirements of Fed. R. Civ. P. 23(b)(1), (2), or (3). *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007). "The party seeking class certification bears the burden of demonstrating that the requirements of [R]ule 23 have been met." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737–38 (5th Cir. 2003) (citing *Allison*, 151 F.3d at 408).

Countrywide contests the bankruptcy court's holding that Plaintiffs met the requirements of Rule 23(b)(2).[4] "[Rule 23(b)(2)'s] focus on injunctive and declaratory relief presumes a class best described as a 'homogenous and cohesive group with few conflicting interests among its members.' Class certification centers on the defendants' alleged unlawful conduct, not on individual injury." *Monumental Life*, 365 F.3d at 415 (quoting *Allison*, 151 F.3d at 413). Rule 23(b)(2)[5] requires that (1) the defendant's actions or refusal to act are generally

---

[3] Fed. R. Civ. P. 23(a) states:
(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

[4] Though Countrywide argues that the bankruptcy court did not properly conclude that the class met the requirements of 23(a), Countrywide has waived this argument since it did not raise this argument until its reply brief. "An appellant abandons all issues not raised and argued in its *initial* brief on appeal." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

[5] Fed. R. Civ. P. 23(b)(2) states that:
A class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

applicable to the class as a whole and (2) injunctive relief predominates over damages sought. *Bolin*, 231 F.3d at 975.

A. General Applicability to the Class

"Instead of requiring common issues, 23(b)(2) requires common behavior by the defendant towards the class." *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010). "The court may certify a class under Rule 23(b)(2) if 'the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.'" *Bolin*, 231 F.3d at 975 (citing Fed. R. Civ. Proc. Rule 23(b)(2)).

The bankruptcy court did not abuse its discretion when it concluded that Countrywide's fee charging actions in alleged derogation of Rule 2016(a) were generally applicable to the narrowly certified "unapproved fees" class of approximately 125 individuals. Countrywide charged every class member purportedly unauthorized fees in contravention of Rule 2016(a). It is this alleged common behavior towards all members of the class—"systematically ignor[ing] Rule 2016(a) by charging unauthorized fees"—that led to the class members allegedly being harmed in the same way. *See Bolin*, 231 F.3d at 975 n.22. As the bankruptcy court explained, "[t]he [class action] therefore eliminates piecemeal litigation concerning whether Countrywide must seek Court approval for fees that it imposes: once the class is certified and the injunction is granted or denied, that issue will be resolved as to all class members."

Countrywide argues that our decision in *Wilborn II,* involving similar facts to the instant case, mandates that class certification be denied. *Wilborn II*, however, was exactingly adhered to by the bankruptcy court, which extensively applied *Wilborn II*'s reasoning to redefine and narrow the instant class and

appropriate respecting the class as a whole.

proposed injunction and to deny class certification as to any damages. The *Wilborn II* plaintiffs alleged that, "for each named plaintiff and each unnamed class member Wells Fargo impermissibly charged post-petition fees and costs without obtaining approval from the bankruptcy court, as purportedly required by Title 11 and [Federal Rule of Bankruptcy Procedure 2016]." 609 F.3d at 752. The bankruptcy court granted class certification for the plaintiffs' claims for declaratory judgment, disgorgement, injunctive relief, and sanctions. *Id.* at 751. On appeal, after rejecting class certification under Rule 23(b)(3), we determined that class certification was also improperly granted under Rule 23(b)(2) because "[a]gain, the circumstances and court orders differ between the judges and cases. And the injunctive or declaratory relief sought by the plaintiffs must predominate over claims for monetary relief." *Id.* at 757 (citing *Maldonado*, 493 F.3d at 524). We concluded that to determine which fees should be disgorged, the bankruptcy court would have to conduct an individual assessment of each individual's claims to figure out how and why certain fees were charged or paid. *Id.* at 756–57.[6] Such an assessment would include deciding whether debtors agreed to the fees, whether the parties entered into an agreement to modify the stay or agreed to a loan modification, whether the bankruptcy court approved of the fees, and whether the defendant had a viable defense to each particular plaintiff's fees. *Id.*

In the instant case, the bankruptcy court conformed its ruling explicitly to our *Wilborn II* decision, explaining how it would not include damages claims in its class certification grant because, "when damages enter the fray, individualized issues begin to predominate as the Court must consider the harm

---

[6] Although these citations refer to the portion of *Wilborn II* that analyzes class certification under Rule 23(b)(3), the Rule 23(b)(2) discussion incorporates by reference the earlier Rule 23(b)(3) discussion. *See Wilborn II*, 609 F.3d at 757 ("For similar reasons, class certification is improper under Rule 23(b)(2). . . . Again, the circumstances and court orders differ between the judges and cases.").

suffered by each class member on a case-by-case basis." Similarly, because disgorgement and other damages claims were also excluded from this class action, Countrywide will not be required to adjudicate and repay fees, again, responding to our direction in *Wilborn II* that individualized disgorgements not be resolved through class action procedure. "[Rule 23(b)(2)] is clear that claims seeking injunctive or declaratory relief are appropriate for (b)(2) class certification." *Allison*, 151 F.3d at 411. The injunction being sought would target only the alleged Countrywide practice of viewing Rule 2016(a) as inapplicable to any fee assessed post-petition but charged post-discharge and, accordingly, any practice of never seeking approval of such fees under Rule 2016(a). If Plaintiffs prevail, Countrywide would no longer be able to collect or attempt to collect fees within the scope of Rule 2016(a) that, according to its own readily accessed and comprehensive AS-400 database, were incurred post-petition and pre-discharge yet have not been authorized for collection pursuant to Rule 2016(a).[7] "The focus is properly upon Countrywide's fee assessment and collection practice, not on the individualized manner in which each class member may have been affected by the practices."[8] As a result, the injunctive claim on

---

[7] In abundance of caution to avoid individualized litigation and a loss of class homogeneity, the bankruptcy court made clear that even injunctive success for the class to ensure Countrywide's compliance with Rule 2016(a) might mean specific fees validly collected by Countrywide will be retained.

[8] The bankruptcy court's single-issue injunctive class redefinition and application of *Wilburn II* demonstrate that Countrywide's alleged fee practice defenses will not be implicated or compromised in this litigation. In fact, that concern, with careful inquiry into the named Plaintiffs' cases, was the basis for the bankruptcy court's broad application of *Wilborn II* to refuse certification even as to non-disgorgement damages claims. Regardless, our caselaw is clear that courts are "free . . . as often as necessary before judgment" to reconsider whether class certification continues to be appropriate. *McNamara v. Felderhof*, 410 F.3d 277, 280 (5th Cir. 2005) (citations omitted); *see also Richard v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) (holding, before the 2003 amendments to Rule 23, that a district judge must decertify a class as appropriate). As contemplated by the bankruptcy court, it can determine across individual cases at trial whether authorization pursuant to Rule 2016(a) is unnecessary in circumstances where Countrywide would invoke waiver, estoppel, voluntary payment, or *res judicata* as a

No. 11-40056

its own does not involve "the myriad issues that may arise in each case as to whether and how fees and costs were imposed." *Wilborn II*, 609 F.3d at 757.[9]

The bankruptcy court made factual findings based on multiple days of testimony and the fifty volume record and concluded therefrom that many of the factors cited by Countrywide as requiring an individualized assessment of claims are readily identifiable in Countrywide's AS-400 database. For each mortgagor, the AS-400 database tracks the type and amount of all fees; whether a fee was classified as recoverable (collectable) or non-recoverable (not collectable); the funds pre- and post-petition; all payments; the mortgagor's bankruptcy filings; the status, case number, and chapter of the mortgagor's bankruptcy case; the name of the trustee handling the mortgagor's bankruptcy case; the date of the chapter 13 plan confirmation; and all information relevant to the escrow and principal balance of the mortgage. After a firsthand review of the evidence, the bankruptcy court determined, based on testimony by one of Countrywide's witnesses, that Countrywide's AS-400 database was searchable, making the information easily ascertainable without court intervention.[10]    Since

---

defense. The injunction, the court clarified, would not impede the retention or recovery of validly assessed fees.

[9] Additionally, "there is no concern that 'the legitimate interests of potential class members who might wish to pursue their monetary [damages] claims individually' would be interfered with by this class certification." *James v. City of Dallas, Tex.*, 254 F.3d 551, 572–73 (5th Cir. 2001) (quoting *Allison*, 151 F.3d 415), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839–41 (5th Cir. 2012) (explaining that, contrary to prior Fifth Circuit caselaw that "[t]he fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality," the Supreme Court held in *Dukes v. Walmart*, 131 S. Ct. 2541 (2011), that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." (internal quotation marks omitted)). The proposed injunction does not indicate that it would have any preclusive effect on any of the individual plaintiffs' damages claims.

[10] The bankruptcy court pointed out that "[t]he only relevant data noticeably absent from the AS-400 database is information concerning court authorization of fee awards"; consequently, the bankruptcy court explained that any fees already agreed upon by the parties would not be considered as a part of the class action.

9

No. 11-40056

"Countrywide could [] query all the fees charged to every Countrywide account in the Southern District of Texas, or even to every mortgage account nationwide," the bankruptcy court faced unique facts that allowed it to conclude that it would not need to determine on a loan-by-loan basis whether fees were improperly charged.

Next, Countrywide argues that its conduct cannot be generally applicable to the class because Countrywide had no policy concerning Rule 2016(a) compliance. However, the bankruptcy court did not abuse its discretion when it determined that because "Countrywide assessed and charged fees to the class according to its understanding that its conduct was not regulated by Rule 2016(a) . . . . Plaintiffs have sufficiently alleged behavior applicable to the class as a whole under Rule 23(b)(2) and *Bolin*." The bankruptcy court reasonably determined, based on the extensive record, that Countrywide had a regular practice for dealing with fees accrued post-petition but charged post-discharge and Rule 2016(a). When it perceived that compliance with Rule 2016(a) was not required, Countrywide had a practice of noncompliance. The bankruptcy court summarized its findings from evidence submitted to it as follows:

> Multiple employees of Countrywide, each of whom was intimately familiar with Countrywide's relevant bankruptcy and fee collection policies, testified that Countrywide would regularly assess fees without any concern for Rule 2016(a)'s requirements. The employees also testified that Countrywide would regularly classify unauthorized fees as recoverable from debtors in the AS-400 database.[11]

---

[11] The instant case, therefore, is distinguishable factually from *Dukes v. Walmart*, where the Supreme Court held that the plaintiffs had offered insufficient evidence to show that the discriminatory treatment at issue was typical of Wal-Mart's employment practices. 131 S. Ct. at 2554–55 (discussing and applying *Bolin*). The Supreme Court noted that Wal-Mart had a specific policy forbidding sex discrimination, and individual Wal-Mart managers were using their discretion over hiring matters to discriminate. *Id.* at 2553–54. In contrast, the bankruptcy court found that Plaintiffs in the present case have identified a regular practice within Countrywide of not following Rule 2016(a). *See also id.* at 2555. It is not the case that Countrywide required its employees to follow Rule 2016(a) but individual employees

No. 11-40056

In addition, Countrywide contends that the bankruptcy court was mistaken when it concluded that Countrywide's behavior was generally applicable to the class because there was no legal consensus regarding whether Rule 2016(a) applied to post-petition mortgage fees. However, this fact does not impact the general applicability of Countrywide's behavior because Countrywide treated all class members the same, failing to seek approval in every case. Irrespective of any legal uncertainty as to Rule 2016(a), Countrywide consistently did not apply for authorization pursuant to Rule 2016(a); there was no contradictory or sporadic treatment of Rule 2016(a) by Countrywide that would militate against certification of this class.[12]

Finally, Countrywide argues, citing *Meyer v. Brown & Root Construction Co.*, 661 F.2d 369 (5th Cir. 1981), that the proposed injunction would be improper because it merely orders Countrywide to obey the law. Countrywide's argument misinterprets *Meyer*. In *Meyer*, the district court enjoined the defendant from "'engaging in the stated unlawful employment practice.'" *Id.* at 373. The defendant argued that such language was too vague because it merely ordered the defendant to obey the law generally rather than identifying what conduct was specifically prohibited. *Id.* We rejected that argument, holding that the injunction was sufficiently specific because the judgment made it clear that the unlawful employment practice being prohibited was "constructively discharging plaintiff when she was pregnant" in violation of Title VII. *Id.*

---

chose not to; in fact, no Countrywide employee filed a Rule 2016(a) application during the time period identified in the class definition.

[12] Countrywide argues that to the extent that it did have a Rule 2016(a) policy, that policy was to defer decision-making to local counsel. However, local counsel was not charged with determining whether a fee fell within the scope of Rule 2016(a) or deciding whether or not bankruptcy court approval in compliance with Rule 2016(a) should be sought; instead, Countrywide only asserts that local counsel determined whether to seek approval of fees in ways other than complying with Rule 2016(a), including agreed orders and amended proofs of claim.

No. 11-40056

Injunctions are problematic when they order a defendant to obey the law but do not simultaneously indicate what law the defendant needs to obey. *Id.* We did not hold that injunctions that order a defendant to obey a specific law are problematic. *See id.*

Therefore, we conclude that the bankruptcy court did not abuse its discretion by determining that Countrywide's failure to seek bankruptcy court approval under Rule 2016(a) is generally applicable, under these facts probingly ascertained by the bankruptcy court, to this narrow class.

B. Damages are "Incidental" to Injunctive Relief

Since no damages are part of this case's class certification, the bankruptcy court did not abuse its discretion when, after three days of hearings and consideration of extensive supporting evidence, it concluded that the Rule 23(b)(2) requirement that damages must be sufficiently incidental to injunctive relief was met. "[Trial] courts 'are in the best position to assess whether a monetary remedy is sufficiently incidental to a claim for injunctive or declaratory relief.'" *Casa Orlando Apartments*, 624 F.3d at 201 (quoting *Allison*, 151 F.3d at 416). The bankruptcy court recognized that, "monetary relief, to be viable in a [R]ule 23(b)(2) class, must 'flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief,'" and properly applied the relevant analysis from *Wilborn II* to Plaintiffs' damages claims, denying class certification for those issues. The bankruptcy court then held that Rule 23(b)(2)'s predominance requirement was easily satisfied since only injunctive relief was at issue.[13] Since no monetary relief is sought,

---

[13] The bankruptcy court's limited grant of class certification is especially appropriate because "a court should certify a class on a claim-by-claim basis, treating each claim individually and certifying the class with respect to only those claims for which certification is appropriate." *Bolin*, 231 F.3d at 976. According to *Bolin*, "Rule 23(c)(4) explicitly recognizes the flexibility that courts need in class certification by allowing certification 'with respect to particular issues' and division of the class into subclasses." *Id.*

monetary relief cannot be more than incidental to injunctive relief. This comports with our reasoning in *James* that since "much of the requested redress is pure injunctive relief," the pure injunctive relief "does not implicate a concern about monetary damages." 254 F.3d at 572; *see also Allison*, 151 F.3d at 411 (explaining that class certification would have been proper if the plaintiffs were only seeking injunctive relief because the plain language of Rule 23(b)(2) would have been satisfied).

Because the bankruptcy court's decision was not an abuse of discretion, we affirm its grant of class certification for Plaintiffs' injunctive relief claim.

II. Class Definition

Countrywide argues that the bankruptcy court adopted an improper class definition by certifying a so-called "fail-safe class." A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability. *Cf. Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 404 (Tex. 2000) (describing the concept). "'[T]he class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class.'" *Wilborn I*, 404 B.R. at 860 (citation omitted); *see also Adashunas v. Negley*, 626 F.2d 600, 603–04 (7th Cir.1980) (holding that a reasonably defined class of "children entitled to a public education who have learning disabilities and 'who are not properly identified and/or who are not receiving' special education" did not exist because the class was "so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable" and the proposed class definition would result in a "fail-safe" class); *Beeson*, 22 S.W.3d at 403–05. Stated otherwise, the class definition is framed as a legal conclusion. *Beeson*, 22 S.W.3d at 404.

Countrywide does not cite any case where we have rejected a class definition because it created a so-called fail-safe class. We rejected a rule

against fail-safe classes in *Mullen v. Treasure Chest Casino*, 186 F.3d 620 (5th Cir. 1999), and *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993), *abrogated on other grounds by Dukes*, 131 S. Ct 2541.  The plaintiff in *Forbush* proposed that the court should define its class as, "employees 'whose pension benefits have been, or will be, reduced or eliminated as a result of the overestimation of their Social Security benefits.'" 994 F.2d at 1105.   The defendant argued that the class was not defined with sufficient specificity and was "hopelessly 'circular,' as the court must first determine whether an employee's pension benefits were improperly reduced before that person may be said to be a member of the class." *Id.*   In response, we stated that, "[t]his argument is meritless and, if accepted, would preclude certification of just about any class of persons alleging injury from a particular action.  These persons are linked by this common complaint, and the possibility that some may fail to prevail on their individual claims will not defeat class membership." *Id.*

In *Mullen*, the class was defined as, "all members of the crew of the M/V Treasure Chest Casino who have been stricken with occupational respiratory illness caused by or exacerbated by the defective ventilation system in place aboard the vessel." 186 F.3d at 623.  The defendant argued that, "any class must be capable of objective identification before it can be certified" and because membership in the class was contingent upon "ultimate issues of causation," the defendant was "prejudiced by being forced to defend against claimants who may not end up being members of the class." *Id.* at 624 n.1.  Relying on *Forbush*, we rejected this argument, holding that, "because the class is similarly linked by a common complaint, the fact that the class is defined with reference to an ultimate issue of causation does not prevent certification." *Id.*   Because our precedent rejects the fail-safe class prohibition, we conclude that the bankruptcy court did not abuse its discretion when it defined the class in the present case.

No. 11-40056

III. Motion for Reconsideration

Countrywide filed a Rule 59(e) motion for reconsideration, arguing that Plaintiffs' claim for injunctive relief was mooted by a consent judgment agreed to by the Federal Trade Commission ("FTC") and Countrywide in the United States District Court for the Central District of California (the "consent judgment").[14] The bankruptcy court denied Countrywide's Rule 59(e) motion for reconsideration, holding that the nationwide injunction in section IX of the consent judgment did not include all of the relief available to the class in the proposed injunction. Specifically, the bankruptcy court determined that the consent judgment did not moot the proposed injunction because (1) the consent judgment allows Countrywide to collect fees without Rule 2016(a) bankruptcy court authorization by following instead debtor notice procedures set forth in the FTC consent judgement and (2) the consent judgment fails to provide relief to Plaintiffs who had payments misapplied by Countrywide.[15]

---

[14] The relevant portion for the consent judgment states:

IT IS FURTHER ORDERED that Defendants, their officers, employees, agents, representatives, and all other Persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, directly or through any corporation, subsidiary, division, or other device, are hereby permanently restrained and enjoined, in connection with the Servicing of any Loan that incurred any Fee, Escrow Shortage, and/or Escrow Deficiency during a Chapter 13 Bankruptcy, from collecting any such Fee, Escrow Shortage, and/or Escrow Deficiency after Defendants obtain relief from the bankruptcy stay or, if relief from stay is not sought or granted, after the debtor is discharged or the bankruptcy case is dismissed, unless Defendants (1) obtained specific court approval for the charges during the Chapter 13 Bankruptcy case, or (2) provided to the consumer the notices required under Sections VIII and IX of this Order.

[15] We also agree with the bankruptcy court's analysis of the merits of Countrywide's motion. The bankruptcy court examined whether Countrywide met its burden to show that there was a realistic prospect that the violations alleged by Plaintiffs would continue notwithstanding the consent judgment. The text of the consent judgment does not delineate the scope of Rule 2016(a) and could allow Countrywide to bypass bankruptcy court authorization by giving mortgagors notice of the fees through the consent judgment's notice procedures. As the bankruptcy court correctly explained, "this case is primarily about

15

No. 11-40056

We affirm the bankruptcy court's denial of Countrywide's motion for reconsideration of the certification order. Rule 59(e) motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). They are used to "call[] into question the correctness of a judgment"and are "properly invoked 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (internal citations omitted). We perceive no manifest error requiring the application of this extraordinary remedy because of Countrywide's consent judgment with the FTC.

In *Templet*, we refused to reverse a district court's rejection of a Rule 59(e) motion when "the underlying facts were well within the [plaintiffs'] knowledge prior to the district court's entry of judgment." *Id.* Here, the consent judgment was entered by the Central District of California on June 15, 2010. The

Plaintiffs' desire to force Countrywide to comply with Rule 2016(a) authorization before collecting fees incurred during Plaintiffs' bankruptcies." The consent judgment would not necessarily require this compliance.

Furthermore, Appellees argue that Countrywide could reclassify fees from recoverable to non-recoverable back to recoverable so that it could use the consent judgment's notice provision to avoid seeking bankruptcy court authorization. This comports with the bankruptcy court finding in its class certification decision, based on evidence considered by it, that Countrywide's employees "testified that Countrywide would regularly classify unauthorized fees as recoverable from debtors in the AS-400 database," and that there was a realistic possibility that Countrywide could reclassify fees from non-recoverable to recoverable to circumvent Rule 2016(a) by "collect[ing] unauthorized fees, which were deemed current during this class action, after the conclusion of this case."

Finally, the consent judgment explicitly does not include banks affiliated with Countrywide because banks are outside the jurisdiction of the FTC. The proposed injunction has no such limitation.

bankruptcy court issued its order on July 21, 2010. The defendants first brought the consent judgment to the bankruptcy court's attention in its Rule 59(e) motion, filed on August 4, 2010. As the bankruptcy court emphasized, Countrywide could have filed a supplemental motion notifying the bankruptcy court of the consent judgment just as Countrywide had done after *Wilborn II* was decided. Because Countrywide had forty-one days to apprise the bankruptcy court of the consent judgment before the bankruptcy court issued its certification order, the consent judgment did not constitute newly discovered evidence compelling Rule 59(e) relief as Countrywide alleges.

Countrywide argues that it could not have known that the bankruptcy court would certify the class only for injunctive relief and therefore, that it could not have known that the consent judgment would moot the class certification grant. However, the consent judgment was relevant to the case no matter how broadly the bankruptcy court granted class certification. Although the bankruptcy court certified a narrower class than the one sought by Plaintiffs, Countrywide knew that Plaintiffs were seeking injunctive relief before the bankruptcy court issued its class certification order. The bankruptcy court could have explored and accepted Countrywide's argument and determined that Plaintiffs' claim for injunctive relief was moot even if the bankruptcy court had certified both a damages and an injunctive class. Because we conclude that Countrywide's Rule 59(e) motion for reconsideration was not based on newly discovered evidence, we do not revisit the bankruptcy court's separate merits denial of the motion.

VI. Conclusion

For the above reasons, we AFFIRM the certification of the injunctive class, the bankruptcy court's class definition, and the denial of Countrywide's motion for reconsideration.