**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-2165**

---

MR. DEE'S INC., on behalf of themselves and all others similarly situated; RETAIL MARKETING SERVICES, INC., on behalf of themselves and all others similarly situated; CONNECTICUT FOOD ASSOCIATION, on behalf of themselves and all others similarly situated,

       Plaintiffs – Appellants,

v.

INMAR, INC.; CAROLINA MANUFACTURER'S SERVICES, INC.; CAROLINA SERVICES; CAROLINA COUPON CLEARING, INC.,

       Defendants – Appellees.

-------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,

       Amicus Supporting Appellee.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:19−cv−00141−WO−LPA)

---

Argued:  December 10, 2024               Decided:  February 12, 2025

---

Before WILKINSON, QUATTLEBAUM, and BERNER, Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Quattlebaum and Judge Berner joined.

———————————

**ARGUED:** Daniel Lee Low, KOTCHEN & LOW LLP, Washington, D.C., for Appellants. Lisa R. Bugni, KING & SPALDING LLP, San Francisco, California, for Appellees. **ON BRIEF:** Daniel Kotchen, KOTCHEN & LOW LLP, Washington, D.C.; Kearns Davis, Matthew B. Tynan, BROOKS PIERCE MCLENDON HUMPHREY & LEONARD LLP, Greensboro, North Carolina, for Appellants. Anne M. Voigts, Palo Alto, California, Mateo de la Torre, New York, New York, Matthew V.H. Noller, KING & SPALDING LLP, San Francisco, California; Samuel B. Hartzell, Pressly McAuley Millen, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North Carolina, for Appellees. Jennifer B. Dickey, Jonathan D. Urick, UNITED STATES CHAMBER LITIGATION CENTER, Washington, D.C.; Brian D. Schmalzbach, MCGUIREWOODS LLP, Richmond, Virginia, for Amicus Curiae.

———————————

2

WILKINSON, Circuit Judge:

Plaintiffs-appellants Mr. Dee's Inc., Retail Marketing Services, Inc., and Connecticut Food Association are purchasers of coupon processing services. They sought class certification in a lawsuit alleging that Inmar, Inc. and its subsidiaries participated in an anticompetitive conspiracy to raise coupon processing fees. After multiple rounds of briefing, the district court rejected plaintiffs' attempts to certify a manufacturer purchaser class. Plaintiffs appealed, arguing that each of the three manufacturer class definitions they proposed satisfied the requirements of Federal Rule of Civil Procedure 23. Because we find that the district court did not abuse its discretion in declining to certify any of the proffered manufacturer classes, we affirm.

I.

A.

This case arose out of alleged anticompetitive conduct in the coupon processing industry. Stated simply, coupon processing is what happens to coupons after they have been redeemed at grocery stores and other retailers. When a manufacturer issues a coupon, a consumer may present the coupon to a retailer in exchange for a discount on the purchase price of the manufacturer's product. Naturally, retailers want to be reimbursed for the discount they provide in honoring the coupon. Manufacturers, meanwhile, want to ensure that they only reimburse retailers for coupons that have been properly redeemed. This is where coupon processing comes into play. J.A. 854–55.

Traditionally, processing paper coupons involved two additional players beyond retailers and manufacturers. First, retailers would send the coupons to a "retailer processor"

3

to count them and invoice the manufacturer. Next, the coupons would be sent to a "manufacturer processor" hired by the manufacturer to re-count the coupons and verify the retailer processor's invoice. The amount that manufacturers were ultimately asked by retailers and retailer processors to pay included the face value of the coupons plus additional processing fees, including shipping fees. J.A. 855–57.

Importantly, because retailers and retailer processors did not contract directly with manufacturers for coupon processing services, manufacturers were not contractually obligated to pay shipping fees. Adding another layer of complication, manufacturers sometimes disagreed with the amounts they were invoiced. When this happened, the manufacturer might refuse to pay, or "charge back," part of the invoiced amount. In response, a retailer could "deduct" chargebacks from what the retailer owed the manufacturer for the products they purchased. J.A. 856–58, 2055.

B.

The three named plaintiffs in this case are purchasers of coupon processing services. Mr. Dee's, Inc. is a manufacturer that issues coupons and purchases coupon processing services. Retail Marketing Services, Inc. and Connecticut Food Association purchase coupon processing services on behalf of retailers. Defendants Inmar, Inc. and its subsidiary Carolina Manufacturer's Services, Inc. ("CMS") sell processing services to manufacturers. Inmar's subsidiaries Carolina Coupon Clearing, Inc. ("CCC") and Carolina Services (collectively "Inmar") sell processing services to retailers. J.A. 2053–54.

The plaintiffs allege that Inmar entered a horizontal price-fixing agreement with competitor International Outsourcing Services, LLC ("IOS") that resulted in higher

4

shipping fees. The alleged conspiracy lasted from 2001 until 2007 when certain IOS personnel were criminally indicted. The antitrust case against Inmar was first brought in the United States District Court for the Eastern District of Wisconsin in 2008, but proceedings were stayed to allow resolution of the criminal charges. IOS was eventually dismissed from the antitrust case after filing for bankruptcy, leaving only the Inmar defendants. In 2019, the case was transferred to the Middle District of North Carolina. J.A. 2053–56, 2061.

As is typical in the antitrust context, the plaintiffs relied heavily on expert testimony to make their case. The centerpiece of plaintiffs' evidence was a report prepared by expert witness Dr. Kathleen Grace. Dr. Grace used a dataset of fees charged to manufacturers to calculate a "mean shipping fee payment per 1,000 coupons" for Inmar, IOS, and NCH (another coupon processor not part of the alleged conspiracy) for each year between 2000 and 2007. J.A. 2057. She then performed regression analyses "to estimate shipping fee overcharges," that is, the amounts manufacturers paid above a forecasted competitive shipping fee. J.A. 2057–60. Dr. Grace also estimated shipping fee overcharges for retailers that resulted from manufacturers refusing to pay shipping fees. J.A. 2060–61.

Plaintiffs sought certification for two classes, one of manufacturer purchasers of coupon processing services (which the district court denied) and another of retailer purchasers (which the district court granted). For simplicity, we focus only on the proffered manufacturer classes as to which we granted permission to appeal. J.A. 2117, 2119.

The district court denied plaintiffs' first two motions for class certification without prejudice. The first was denied after issues arose during discovery. J.A. 2061–62. The

5

second sought to certify "a class of manufacturers that directly paid observably higher CCC or IOS shipping fees during the class period (April 11, 2001 through March 28, 2007), identified on the list attached to Plaintiffs' supporting brief at Exhibit 24, Appendix A." J.A. 1249. Appendix A was a list of 5,280 manufacturers which Dr. Grace identified as having "directly paid observably higher CCC or IOS shipping fees during the class period." J.A. 1249, 1728–1828. The district court rejected the proposed class as an "impermissible fail-safe class[] because class membership is conditioned on having suffered antitrust injury or impact in the form of increased shipping fees." J.A. 1447.

Plaintiffs' third motion sought certification of "a class of manufacturers that directly paid CCC shipping fees during more than 8 different calendar months during the class period (April 11, 2001 through March 28, 2007) and/or were clients of CMS and directly paid shipping fees to IOS for at least 2.2 million coupons during the class period" (the "Limited Payer Class"). J.A. 1452, 2066–67. After a motions hearing, the district court directed the parties to file additional briefing discussing whether a class could be certified without the month and volume cutoffs. In response, the plaintiffs added a new potential class definition: "manufacturers that directly paid CCC shipping fees during the class period and/or were clients of CMS and directly paid shipping fees to IOS" (the "All Payer Class"). J.A. 2067. Plaintiffs also proposed that the classes could, alternatively, be defined simply as the "manufacturers listed in [Appendix A]." J.A. 2097 n.10 (the "Fixed List Class").

The district court rejected each of the three proffered manufacturer classes. With respect to the Fixed List Class, the district court determined that the revised definition

6

"mirror[ed] the fail-safe class[]" that it previously refused to certify and "fail[ed] for the same reason." *Id.* Regarding the Limited Payer Class, the district court found that the class excluded "more than 2,000 manufacturers who were allegedly victims of the same Sherman Act violation." J.A. 2073. Because, on the court's view, the scope of the proposed class was "untethered from Defendants' alleged wrongs," the class failed Rule 23's implicit ascertainability requirement. J.A. 2052–53. Finally, the district court rejected the All Payer Class for failing to satisfy Rule 23(b)(3)'s predominance requirement. The district court found that of the 7,813 members of the All Payer Class, 2,533 suffered no demonstrable antitrust injury. Without "expert testimony showing impact and damages to almost a third of the class," the district court determined that the plaintiffs had not met their burden to show that common questions would predominate. J.A. 2089–90, 2104.

Invoking Rule 23(f), the plaintiffs appealed the district court's denial of certification of a manufacturer class. This court granted review. J.A. 2119.

## II.

We have long recognized that district courts possess "broad discretion in deciding whether to certify a class." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). Accordingly, this court reviews class certification decisions for abuse of discretion. *Gregory v. Finova Cap. Corp.*, 442 F.3d 188, 190 (4th Cir. 2006). In applying this standard, we are "cognizant of both the considerable advantages that our district court colleagues possess in managing complex litigation and the need to afford them some latitude in bringing that expertise to bear." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019).

7

In the class action context, an "abuse of discretion occurs when a district court 'materially misapplies the requirements of Rule 23.'" *Stafford v. Bojangles' Rests., Inc.*, 123 F.4th 671, 678 (4th Cir. 2024) (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014)). A district court also abuses its discretion when it "clearly errs in its factual findings." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006). To find that the district court clearly erred in the factual findings underlying a certification decision, we must be "left with the definite and firm conviction that a mistake has been committed." *Williams v. Martorello*, 59 F.4th 68, 86 (4th Cir. 2023) (quoting *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012)).

Rule 23(a) requires that every class satisfy four basic prerequisites: "numerosity of parties, common questions of law or fact, typicality of claims or defenses of the representative parties, and adequacy of representation." *G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193, 202 (4th Cir. 2024). Along with these four explicit requirements, we have also required every class to satisfy Rule 23's implicit "ascertainability" requirement, which precludes certification "unless a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co.*, 764 F.3d at 358.

A class must also "fall within one of the three categories enumerated in Rule 23(b)." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). Here, plaintiffs sought class certification under Rule 23(b)(3). This category of class action "requires a finding that common questions 'predominate over' any individualized questions, and that 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Stafford*, 123 F.4th at 678–79 (quoting Fed. R. Civ. P. 23(b)(3)).

8

The Supreme Court has made it clear that "[a] party seeking class certification must affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This is so because the class action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). In this regard, we have emphasized that "the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT Prod. Co.*, 764 F.3d at 358 (citation omitted). The need to perform this rigorous analysis means that a district court may engage in a limited merits inquiry to ensure that the Rule 23 requirements are met. *Id.*

## III.

Mindful of the standards outlined above, we review the district court's denial of each of the proposed classes in turn.

## A.

We begin with the court's rejection of the Fixed List Class. In their third attempt to certify a class of manufacturer purchasers, the plaintiffs proposed to certify a class of "manufacturers listed in [Appendix A]." J.A. 2097 n.10. The district court noted that this definition was identical to the one it had previously considered and rejected but for deletion of the phrase "that directly paid observably higher CCC or IOS shipping fees during the class period." *Id.* Because the revised definition referenced the same list of manufacturers generated from Dr. Grace's regressions, the district court concluded that this class too was

an "impermissible fail-safe class[] because class membership is conditioned on having suffered antitrust injury or impact in the form of increased shipping fees." *Id.*

A "fail-safe" class is "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012). In *EQT Production Co. v. Adair*, we instructed the district court in a footnote to "consider" on remand whether the classes could be defined "without creating a fail-safe class." 764 F.3d at 360 n.9. But we have not expressly recognized an independent prohibition against fail-safe classes as some of our sister circuits have done.[1]

On appeal, the plaintiffs advance several arguments for why the Fixed List Class is not a fail-safe class. They contend that the class members have been definitively identified in Appendix A and will remain class members regardless of the merits outcome, and that merely having paid higher prices, standing alone, would not be sufficient to prove liability under the Sherman Act. *See* Opening Brief at 21–22, 29–30. Moreover, they argue that this court should decline to adopt a prohibition against fail-safe classes that goes beyond the certification requirements prescribed by Rule 23. *See id.* at 35–36.

---

[1] *See, e.g.*, *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012); *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 799 (7th Cir. 2017); *Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022). *But see In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012) (rejecting an independent fail-safe class prohibition); *In re White*, 64 F.4th 302, 313 (D.C. Cir. 2023) (same).

We need not reach the viability of fail-safe classes because the Fixed List Class suffers from more basic defects under Rule 23. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (invoking "the well-recognized authority of courts of appeals to uphold judgments of district courts on alternate grounds"). Fatal to the Fixed List Class is the fact that it fails to *define* a class at all. The text of Rule 23 and our cases interpreting the Rule make clear why "it is insufficient merely to provide a list, however lengthy, of persons said to be in the class and leave it to the court to devise a class definition." 1 McLaughlin on Class Actions § 4:2 (21st ed. 2024).

For one, Rule 23(c) requires the district court to "determine by order whether to certify" a class action "[a]t an early practicable time after a person sues." Fed. R. Civ. P. 23(c)(1)(A). And the "order that certifies a class action must define the class." Fed. R. Civ. P. 23(c)(1)(B). Where, as here, the party moving for certification merely submits a list of names, the district court is left with the task of puzzling out the commonalities that could support a valid class definition. Requiring the district court to engage in this kind of preliminary legwork is at best in tension with Rule 23's direction that a certification order be issued promptly.

More fundamentally, it is the burden of the party seeking class certification, not the district court's, "to demonstrate compliance with Rule 23." *EQT Prod. Co.*, 764 F.3d at 358. And a plaintiff cannot "affirmatively demonstrate" that the various requirements of Rule 23 have been met if the proposed class is identified by nothing more than a reference to a list of names. *Wal-Mart*, 564 U.S. at 350. We will not unsettle the district court's denial

11

of certification of the Fixed List Class where the plaintiffs have attempted to transfer to the district court the burden of demonstrating the class's compliance with Rule 23.

## B.

We next turn to the district court's rejection of the Limited Payer Class. Plaintiffs moved to certify "a class of manufacturers that directly paid CCC shipping fees during more than 8 different calendar months during the class period (April 11, 2001 through March 28, 2007) and/or were clients of CMS and directly paid shipping fees to IOS for at least 2.2 million coupons during the class period." J.A. 1452. The district court observed that the Limited Payer Class was comprised of "3,219 injured manufacturers and 65 uninjured manufacturers" but excluded "more than 2,000 manufacturers who were allegedly victims of the same Sherman Act violation." J.A. 2072–73.

The court found that this class failed to satisfy Rule 23's implicit ascertainability requirement. We have explained that for a proposed class to be ascertainable, individual members must be identifiable "in reference to objective criteria." *EQT Prod. Co.*, 764 F.3d at 358. At the motions hearing, the plaintiffs contended that the month and volume cutoffs reflected a "natural breaking point" in the data "above which almost all manufacturers were injured." J.A. 2073. The district court reasoned, however, that because "Plaintiffs' model, rather than the Defendants' alleged conspiracy, determines which retailers and manufacturers receive the benefits of class membership," the scope of the class was not objectively determined. J.A. 2073–74. The district court also raised a concern that by excluding thousands of manufacturers with valid claims, certification of the Limited Payer

12

Class would frustrate the class action goal of "avoiding multiple lawsuits." J.A. 2075 (quoting *Fariasantos v. Rosenberg & Assocs., LLC*, 303 F.R.D. 272, 278 (E.D. Va. 2014)).

The district court did not abuse its discretion in declining to certify the Limited Payer Class. An essential purpose of any class action is to redress an injury. If the criteria for class membership bear little relationship to the defendants' conduct, then the class definition is untethered from the purpose of employing the class action procedure in the first instance. Here, the fact that more than 2,000 manufacturers—39% of those identified as having paid observably higher shipping fees—were excluded by the date and volume cutoffs demonstrates that the Limited Payer Class definition is untethered from the plaintiffs' own evidence of harm.

By the same token, excising such a large share of potential claimants from the proposed class raises a superiority problem. Certification under Rule 23(b)(3) requires that the class action mechanism be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Because the Limited Payer Class cutoffs exclude thousands of manufacturers purporting to show the same harm as the included class members, certifying such an incomplete class might expose defendants to a continued trickle of individual lawsuits and thereby impair the efficiency goal which is a key purpose of the class action mechanism.

To be sure, we do not mean to suggest that a plaintiff must necessarily prove that a class action would be the "best" method for adjudicating a controversy before a class may be certified. *See Krakauer*, 925 F.3d at 655 (observing that because "claims aggregated under Rule 23(b)(3) can be resolved without the class mechanism," predominance and

13

superiority "ensure that a class action is only used when it makes sense"). We find only that, under the standard of review and the circumstances present here, it was not an abuse of discretion for the district court to conclude that the Limited Payer Class cutoffs rendered certification inappropriate.

C.

Finally, we consider the district court's rejection of the All Payer Class. That class was defined as "manufacturers that directly paid CCC shipping fees during the class period and/or were clients of CMS and directly paid shipping fees to IOS." J.A. 2067. The district court found that the All Payer Class could not satisfy Rule 23(b)(3)'s predominance requirement because Dr. Grace's regressions did not show impact for 2,533 (32%) of the 7,813 class members, and the plaintiffs "fail[ed] to proffer additional evidence that all manufacturers in the class suffered antitrust impact and damages." J.A. 2089.

The plaintiffs raise two primary challenges to this conclusion. First, they argue that the district court erred in finding as a matter of fact that 32% of the members of the All Payer Class were uninjured. Opening Brief at 50. Second, they contend that nothing in Rule 23 permits the district court to deny certification to a class because of a high share of uninjured class members. *Id.* at 52–53.

We disagree on both counts. When it comes to the share of class members lacking evidence of injury, we are hardly "left with the definite and firm conviction that a mistake has been committed." *Williams*, 59 F.4th at 86 (quoting *Hall*, 664 F.3d at 462).[2] Plaintiffs

---

[2] Although the Supreme Court has indicated that a district court's determination of whether an econometric model is capable of proving antitrust damages is a legal finding rather than

14

concede that according to the model prepared by Dr. Grace, the plaintiffs' only expert witness, "there were no *observable* price increases during the conspiracy period" for 32% of the All Payer Class. Opening Brief at 50. Given that the plaintiffs "lack expert testimony showing impact and damages" for almost a third of class members, it was not clearly erroneous for the district court to conclude that that portion of the class was uninjured. J.A. 2104, 2089. Nor did the district court err in declining to infer harm for this segment of the class from evidence of market-wide harm, "including record evidence, admissions, [and] market characteristics." Reply Brief at 24. The district court carefully considered these arguments and explained why they were insufficient to support an inference of injury for the 32% of class members that could not demonstrate harm using Dr. Grace's regressions. *See* J.A. 2104–11.

The district court did not abuse its discretion in finding that the high share of class members with no demonstrable injury presented a predominance problem. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). We cannot conclude that the district court erred in finding that common questions of injury and damages would not predominate where the plaintiffs' only expert witness failed to show harm for nearly one-third of the class. *See Stafford*, 123 F.4th at 681 (finding that "no

---

a finding of fact, *see Comcast*, 569 U.S. at 36 n.5, this is distinct from the discrete finding that the "All Payer Manufacturer class contains 2,533 uninjured members." J.A. 2095. Nor does either party dispute that this is a factual finding.

question of law or fact is common" to class members who "may lack" the very claims at the heart of the plaintiffs' proposed class definitions).

And even among the class members that arguably did show injury, the circumstances surrounding the payment of shipping fees varied substantially. Because, as the district court noted, manufacturers were not contractually obligated to pay shipping fees, J.A. 2055, the fees that manufacturers paid depended on company-specific policies. J.A. 1387–88 (declaration of Inmar president Robert Carter) (stating that "payments were made (or not made) according to written policies set by the manufacturers" and describing individual agreements between CMS and certain large retailer customers to cap shipping fees). Given the disparate payment decisions of manufacturers during the class period, the district court was within its discretion to find class treatment inappropriate under the circumstances presented here.

Finally, we note that attempting to define a class with such a high share of uninjured members also raises Article III standing concerns. Going as they do to the existence of judicial authority, such concerns are not to be ignored. In *TransUnion LLC v. Ramirez*, the Supreme Court held that "every class member must have Article III standing in order to recover individual damages." 594 U.S. 413, 431 (2021). But the Court left open "the distinct question whether every class member must demonstrate standing *before* a court certifies a class." *Id.* at 431 n.4; *see Lab'y Corp. of Am. v. Davis*, No. 24-304, 2025 WL 288305, at *1 (U.S. Jan. 24, 2025) (mem.) (granting certiorari to resolve "[w]hether a federal court may certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) when some members of the proposed class lack any Article III injury").

16

Our circuit has also underscored the importance of standing concerns in class action litigation. *See Alig v. Rocket Mortg., LLC*, --- F.4th. ---, 2025 WL 271563, at *6–7 (4th Cir. Jan. 23, 2025). Some of our sister circuits have addressed the issue of class member standing in conjunction with the requirements of Rule 23. *See, e.g.*, *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 891 (11th Cir. 2023) (emphasizing the importance of Rule 23's predominance requirement post-*TransUnion* "because a district court must ultimately weed out plaintiffs who do not have Article III standing before damages are awarded to a class"). Whatever the resolution of the question posed in *Laboratory Corp.*, the presence of 32% of uninjured members in a proposed class strikes us as much too high. Just as the question of under-inclusiveness was not a marginal one with respect to the Limited Payer Class, so too the question of over-inclusiveness for the All Payer Class is not a close call. In view of both the predominance and standing issues, it was not an abuse of discretion for the district court to decline to certify the All Payer Class.

IV.

A class action is a compromise between opposing forces of individuality and commonality. Because this procedural mechanism is an exception to the usual practice of litigating cases for named parties only, a party seeking class certification must make a positive showing that common issues will rule the day. The need for common issues to predominate is an explicit and indispensable requirement for classes certified under Rule 23(b)(3) and underscores the issues with certifying the manufacturer classes proposed here.

We note in conclusion that manufacturers can propose antitrust class actions that avoid the certification pitfalls delineated above. We are bound in this case, however, to

17

address the particular classes that the plaintiffs proposed and that the district court addressed and rejected. Under the circumstances, we cannot fault the trial court for its decision. In view of the latitude afforded district courts in making class certification rulings, we cannot rightly overturn what the district court did here as an abuse of discretion. Accordingly, its judgment is hereby affirmed.

*AFFIRMED*

18