**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-2287**

---

ROBERT E. STAFFORD, JR., on behalf of himself and all others similarly situated; MELISSA BONETTI, on behalf of herself and all others similarly situated; HERBERT MALLET, on behalf of himself and all others similarly situated; JACQUELINE JOHNSON, on behalf of herself and all others similarly situated; CATHRINE ALLEN, on behalf of herself and all others similarly situated; DEVRON JONES, on behalf of himself and all others similarly situated; TABITHA DANIEL, on behalf of herself and all others similarly situated; LAQUASHA OSAGHEE, on behalf of herself and all others similarly situated; RONDA COLE, on behalf of herself and all others similarly situated,

        Plaintiffs – Appellees,

v.

BOJANGLES' RESTAURANTS, INC.,

        Defendant – Appellant.

---

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:20−cv−00266−MOC−SCR)

---

Argued:  October 30, 2024                  Decided:  December 17, 2024

---

Before WILKINSON and BERNER, Circuit Judges, and Brendan A. HURSON, United States District Judge for the District of Maryland, sitting by designation.

---

Vacated and remanded by published opinion. Judge Wilkinson wrote the opinion in which Judge Berner and Judge Hurson joined.

---

**ARGUED:** Brendan P. Biffany, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellant.  L. Michelle Gessner, GESSNERLAW, PLLC, Charlotte, North Carolina, for Appellees.  **ON BRIEF:** Charles E. Johnson, Douglas M. Jarrell, Emma T. Kutteh, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellant.

———————————

2

WILKINSON, Circuit Judge:

The defendant here challenges the certification of a class action involving allegations of unpaid off-the-clock work and unauthorized edits to employee time records. The classes certified had only one parameter: class members must have worked as a Bojangles shift manager in the relevant state within three years of the filed complaint. We hold that the district court abused its discretion in certifying this class action because it employed an inappropriately high level of generality when (1) identifying the policies which allegedly unify prospective class members' wide-ranging claims, and (2) creating overly broad class definitions. These errors cut to the core of the district court's Rule 23(a) and Rule 23(b)(3) analyses, and we thus vacate the certification order and remand to the district court.

## I.

## A.

Bojangles' Restaurants, Inc. ("Bojangles") is a southern-style fast-food chain. In 2020, the company owned and operated 311 restaurant locations across eight states. J.A. 205. In its restaurants, Bojangles employs a three-tier management structure. Shift managers are the lowest tier of management. They report to assistant general managers, who, in turn, report to general managers. While most of Bojangles' shift managers are full-time employees, some work less than forty hours per week. J.A. 205.

Bojangles has an internal policy that requires all employees be paid for time worked. Bojangles' pay policy emphasizes that "[n]o crewmember is permitted to work 'off the

3

clock' at Bojangles." J.A. 229. Therefore, employees, including shift managers, must clock in and out of their shifts to track their hours worked. As required by the Fair Labor Standards Act ("FLSA"), any tracked hours exceeding forty hours a week are paid at "one and one-half times the regular rate." 29 U.S.C. § 207(a)(1); *see* J.A. 229.

Bojangles permits alterations to employees' clocked time in order to correct errors. To prevent unauthorized edits to an employee's clocked time, the company requires that such time-record changes be signed by both the employee and the supervisor making the edit. For instance, if a shift manager's time records need to be corrected, an assistant general manager or general manager would need to initiate the edit, and both that manager and the shift manager would need to physically sign off on the change. J.A. 229.

The present case arises from a series of allegations that Bojangles systematically violated its own policies, requiring shift managers to work off the clock, and sometimes even editing these employees' time records to avoid exceeding state and federal overtime thresholds.

B.

Named plaintiff Richard Stafford was an hourly-paid shift manager at Bojangles. After being fired in 2020, Stafford filed suit against Bojangles under the FLSA and the North Carolina Wage and Hour Act, claiming that the company "frequently required [him] to stay on the premises, on duty, after closing to clean up and close down the restaurant" while off the clock, did not compensate him for the time spent driving between different restaurants for work-related activities, and, as a result, failed to pay him the correct amount

4

of overtime wages. J.A. 54, 58-60. He alleged that his experiences were part of a systematic effort by Bojangles to artificially suppress their labor costs to stay within specified labor budgets. J.A. 75.

On November 2, 2020, the United States District Court for the Western District of North Carolina conditionally certified a collective action for shift managers' FLSA claims under 29 U.S.C. § 216(b). J.A. 6. With the gates thus open, the claims against Bojangles rapidly accumulated. By April 2022, nearly 550 individuals had joined the collective action. Opening Br. at 6.

On April 15, 2022, Stafford filed a second amended complaint, which added new named plaintiffs and sought class certification of various state wage-and-hour law claims under Federal Rule of Civil Procedure 23(b)(3). Plaintiffs proposed classes for North Carolina, South Carolina, Alabama, Georgia, Kentucky, Tennessee, and Virginia. J.A. 107-09.

Plaintiffs brought a variety of claims centering around the allegation that Bojangles "requires its Shift Managers to perform compensable work tasks before and after their scheduled shifts, during their unpaid meal periods, on their way to and from work, and on their days off, when they are not clocked into Defendant's timekeeping system." J.A. 109. Among the tasks that prospective class members claimed to perform off the clock were pre-shift work activities such as disabling alarms and surveilling the parking lot for suspicious activity; miscellaneous post-closing tasks, including cleaning; workday trips to the bank for deposits and travel between store locations to assist understaffed restaurants or to transport goods. *See, e.g.*, J.A. 299-305, 539-49. The second amended complaint also

alleged that Bojangles was "systematically" shaving hours off shift managers' time records in order to avoid paying overtime wages. J.A. 117.

The exact composition of claims and tasks performed varied among prospective class members. Not all claimed to have experienced time-shaving adjustments, nor did all claim to have worked off the clock in the same fashion as their peers.

In its response to plaintiffs' amended complaint, Bojangles opposed the certification of the new classes. J.A. 149-51.

C.

The district court denied certification of the Alabama, Georgia, Kentucky, Tennessee, and Virginia classes on the basis that the proposed class representatives could not "fairly and adequately protect the interest of the class" as required by Rule 23(a)(4). *Stafford v. Bojangles' Restaurants, Inc.*, No. 20-CV-266, 2023 WL 6967408, at *2-3 (W.D.N.C. Oct. 20, 2023). The district court did, however, find that the proposed North Carolina and South Carolina classes met Rule 23(a) and (b)(3)'s requirements for numerosity, commonality, and predominance, and that proposed class representatives had claims typical of the class and would "fairly and adequately" advocate for class interests. *Id.* at *3-5.

With regard to commonality, the district court relied most heavily on the fact that an estimated 80% of prospective class members worked opening shifts and thus were subject to Bojangles' Opening Checklist. This checklist allegedly mandates that certain tasks be performed prior to clocking in, and the district court found that this "creates a

6

common question of fact." *Id.* at *4. The court further determined that common questions predominated here because "[d]espite differences in the character and extent of Plaintiffs' off-the-clock work, all class members' claims originate from the same alleged policies and practices, including Bojangles Opening Checklist." *Id.* at *6 (internal quotation marks omitted) (citing *Jahagirdar v. Computer Haus NC, Inc.*, No. 20-CV-33, 2021 WL 5163307 (W.D.N.C. Nov. 5, 2021)).

In its order certifying the North and South Carolina classes, the district court defined the classes as follows:

> North Carolina Class: *"All persons who worked as a shift manager at Bojangles in the state of North Carolina at any time from three years prior to the filing of this Complaint to the entry of judgment in the case."*
>
> South Carolina Class: *"All persons who worked as a shift manager at Bojangles in the state of South Carolina at any time from three years prior to the filing of this Complaint to the entry of judgment in the case."*

*Id.* These class definitions were effectively the same as those proffered by plaintiffs. *See* J.A. 126 ("All similarly situated current and former Shift Managers who work or have worked for Bojangles at any of their restaurant locations in [North Carolina/South Carolina] at any time during the applicable statutory period.").

On November 3, 2023, Bojangles petitioned for permission to appeal the certification order, contending that the district court erred in applying Rule 23's commonality and predominance analysis. Petition for Permission to Appeal Under Rule 23(f), *Stafford*, No. 20-CV-266 (W.D.N.C. Nov. 3, 2023), ECF No. 429. We granted the petition to take this appeal. J.A. 48-49.

7

II.

We review the district court's certification of a class under an abuse-of-discretion standard. *In re Marriott Int'l, Inc.*, 78 F.4th 677, 685 (4th Cir. 2023). In this context, abuse of discretion occurs when a district court "materially misapplies the requirements of Rule 23." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). Such misapplications include clear errors in the district court's factual findings or legal errors. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006).

Here the district court committed legal errors in its application of Rule 23's commonality and predominance standards in two principal ways: (1) relying on a vague and overly general "policy" by which Bojangles allegedly mandated shift managers' off-the-clock work and time-record edits, and (2) creating overly broad class definitions.[1]

A.

We set forth at the outset some basics of class-certification law. The area is one that has been beset by a seemingly endless tug of pros and cons. On the one hand, class actions offer the promise of resolving many similar suits at a single time. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974) (identifying the promotion of "efficiency and economy of litigation" as the "principal purpose of the [class-action] procedure"). This

---

[1] The present appeal concerns the district court's certification of classes for plaintiffs' state-law claims. Thus, we do not discuss the certification requirements for collective actions, which are governed by different, albeit somewhat overlapping, standards under the FLSA. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 448-49 (2016).

spares defendants the drip of repeated individual actions and offers the prospect of rooting out unlawful pervasive practices through an aggregate and collective effort.

On the other hand, class-action lawsuits can ratchet liability to potentially ruinous levels and force companies to settle or bet the store. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023) (citing HENRY J. FRIENDLY, FEDERAL JURISDICTION: A GENERAL VIEW 120 (1973)). They may incentivize litigation with awards of large attorneys' fees at the same time class members may receive little more than a pittance. *See, e.g.*, Deborah L. Rhode, *Class Conflicts in Class Actions*, 34 STAN. L. REV. 1183, 1205-09 (1982); S. REP. NO. 108-123, at 15-18 (2003). Rule 23 seeks a balance between the worthy uses and serious abuses of the class-action device, and the humdrum recitation of the Rule's requirements should not obscure the fact that it is one of the Rule drafters' gems.

Plaintiffs seeking to certify a putative class must comply with the requirements outlined in Federal Rule of Civil Procedure 23. Under Rule 23(a), the moving party must first demonstrate the (1) numerosity of prospective class members, (2) common questions of law or fact, (3) typicality of the claims brought by the proposed class representative, and (4) whether the proposed class representative will adequately and fairly represent the interests of the entire class. *G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193, 202 (4th Cir. 2024). In addition, the class action must "fall within one of the three categories enumerated in Rule 23(b)." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). The present class action falls within Rule 23(b)(3), which requires a finding that common questions "predominate over" any individualized questions, and that "a class

9

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23; *see also Gunnells*, 348 F.3d at 423.

Rule 23 holds plaintiffs to a higher bar than a pleading standard. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Id.*; *accord. EQT Prod.*, 764 F.3d at 357 ("[T]he party must present evidence that the putative class complies with Rule 23."). The Supreme Court provided clear guidance in *Wal-Mart Stores v. Dukes* as to the evidence required to establish commonality. Plaintiffs must establish that the common contention is one "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. at 350. Thus, courts must only permit class-wide proceedings if they have the potential to generate "common answers that drive the litigation." *Brown v. Nucor Corp.*, 785 F.3d 895, 909 (4th Cir. 2015).

Rule 23(b)(3)'s predominance requirement is necessarily intertwined with Rule 23(a)'s commonality requirement. Predominance presupposes that a common question exists and measures the question's significance to the pending litigation. While commonality serves to ask whether class-wide proceedings are even possible, predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004).

10

B.

The district court found commonality on the basis that an estimated 80% of prospective class members likely worked an opening shift and had thus conducted off-the-clock pre-shift work while completing tasks on the Opening Checklist. *See Stafford v. Bojangles Restaurants, Inc.*, No. 20-CV-266, 2023 WL 6967408, at *3-4 (W.D.N.C. Oct. 20, 2023). The district court did not address whether any of plaintiffs' other off-the-clock work and time-shaving claims constituted a common question. *Id.* at *4 ("The Court does not—and need not—make any such finding with respect to Plaintiffs' claims regarding Bojangles' time edit authorization policy."). Yet, the court summarily concluded that those claims were "[all] entitled to class treatment" because the plaintiffs had satisfied Rule 23 with respect to their pre-shift work claims. *Id.*

Plaintiffs argue that the common applicability of the Opening Checklist for most class members absolves them of any duty to find that other claims have common questions. *See id.* But the Rule 23 inquiry does not end upon the identification of a common question alone. Plaintiffs' common contention surrounding the Opening Checklist must predominate over all other individualized issues. *See* Fed. R. Civ. P. 23(b)(3). And because of the diversity of claims involved in this class action, a common question exclusive to pre-shift work will not satisfy Rule 23(b)(3)'s predominance requirement alone. Indeed, resolution of whether or not the Opening Checklist mandates off-the-clock pre-shift work does not "resolve" the time-shaving claims or claims of unpaid off-the-clock wages at any other time. *Wal-Mart*, 564 U.S. at 350. At least some of these other claims must embody common questions for the classes to establish Rule 23(b)(3) predominance.

11

The district court noted in this regard that "all class members' claims 'originate from the same alleged policies and practices,' including Bojangles' Opening Checklist." *Stafford*, 2023 WL 6967408, at *6. However, this only appears to allude to plaintiffs' vague and overly general assertion that Bojangles had a policy to violate its own policy regarding off-the-clock work. *See* Response Br. at 4. Beyond allegations of pre-shift work encompassed in the Opening Checklist, the district court made no effort to distinguish between other alleged off-the-clock activities, nor did it identify any company policies pertaining to those activities. Instead the district court leaned into generalities, emphasizing in its typicality analysis that "[r]epresentative parties and class members are 'unified by a common theory of being worked off the clock,' regardless of the specific uncompensated activities they were required to perform." *Id.* at *4.

Allegations of generalized policies are not usually sufficient for the purposes of class certification. Appellate courts are skeptical, for instance, when plaintiffs or district courts rely on nebulous references to "systemic failures" or "systemic deficiencies" to satisfy commonality. *See, e.g.*, *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 842 (5th Cir. 2012). Such vagueness may mask a multitude of disparities. Plaintiffs may invoke overly general policies precisely because "they are at a loss for a more specific thread to tie claims together." *In re White*, 64 F.4th 302, 314 (D.C. Cir. 2023). Indeed, it is circular logic for plaintiffs to create a laundry list of factually diverse claims and then assert that these claims, in turn, prove the existence of a uniform company policy. We endeavor to ensure that commonality is not based on such "semantic dexterity." *Brown*, 785 F.3d at 909.

12

"Rule 23 does not allow for [] a 30,000 foot view of commonality," *In re White*, 64 F.4th at 314, and courts have the obligation to "examine whether differences between class members impede the discovery of common answers," *Brown*, 785 F.3d at 909; *see also Wal-Mart*, 564 U.S. at 350 ("[P]laintiff[s] [must] demonstrate that the class members 'have suffered the same injury . . . .'"). Here it is unclear from the district court's analysis that the many types of claims plaintiffs advance can be united by a common question of liability. The district court pointed to no specific documentation or concrete evidence narrowing the broad theoretical policy by which Bojangles allegedly mandated all different forms of off-the-clock work and time-shaving. On our review of the record, we do not see the equivalent of the Opening Checklist for edits to shift managers' time records or for time spent on off-the-clock bank deposits, inter-restaurant travel, or post-closing activities, for example.

All these activities whether pre-shift, workday, or post-closing, would raise distinct questions. What kind of off-the-clock work did an employee perform? How much time was spent on it? For whom was time-shaving attempted? While evidence of commonality among employees may come in many forms, and may not appear exactly like the Opening Checklist, we require something more than conclusory assertions of some highly generalized company policy to have shift managers work without pay.

## C.

The district court also erred in crafting overly general class definitions that run afoul of Rule 23's core tenets. Rule 23(c)(1)(B) requires that "[a]n order that certifies a class

13

action must define the class and the class claims, issues, or defenses." This requirement is no mere formality. Rather, it aids class members in deciding whether to opt out of a class and facilitates appellate review. *See Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187 (3d Cir. 2006). To achieve those functions, class definitions must be written with specificity. We find the views of our colleagues on the Third Circuit instructive on this matter:

> [T]he requirement of Rule 23(c)(1)(B) that a certification order "define the class and the class claims, issues, or defenses," means that the text of the order or an incorporated opinion must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis.

*Id.* at 187-88; *accord. Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 369 (3d Cir. 2015).

Here the parameters of the North and South Carolina classes are "too broad and ill-defined to reach the thresholds of class certification." *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 933 (5th Cir. 2023). The classes' sole defining characteristic is that they contain Bojangles shift managers who worked for the company during a three-year period. Simply being at a place of employment is, without more, unedifying. No reference is made to the type of off-the-clock work class members performed or whether a class member even performed off-the-clock work *at all*. Nor does the class definition elucidate whether class members must allege that they were denied overtime pay or were subject to time-shaving.

14

Failure to illuminate appropriate class parameters has implications even beyond Rule 23(c)(1)(B). The sheer breadth of the class definitions here bespeaks underlying flaws with the classes' commonality, predominance, and typicality.

"[A] circular class definition [can] reveal the lack of a genuinely common issue of law or fact." *In re White*, 64 F.4th at 314. The present case exemplifies this issue. The district court's certification order again presumes, without more, that all shift managers who worked within the relevant timeframe have a viable claim against Bojangles. In doing so, the district court risked including individuals who would not have a right to recovery but for the sweeping scope of the class certification itself. *See Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) ("[I]f the [class] definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad."); *accord. Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022).

Here the putative class is too overinclusive to ensure commonality. Firstly, some class members may lack any off-the-clock or time-shaving claim against Bojangles, and thus no question of law or fact is common with these individuals. Secondly, even assuming all class members have some legitimate state-law claim, the district court still did not specify what type of factual claims fall within the ambit of the class definition. And *Wal-Mart* does not permit commonality on the sole basis that class members "all suffered a violation of the same provision of law," as this does not ensure that a common answer can address the entire class's claims. 564 U.S. at 350. The "sweeping class definition" before us instead raises the "obvious" issue that the district court may inadvertently be "lump[ing]

15

together" a great many "disparate plaintiffs with widely varying individual claims." *Jamie S. v. Milwuakee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012). Thus, in the absence of more precise class parameters, we cannot assure ourselves that the classes meet Rule 23(a)'s commonality requirement. Furthermore, because the composition of claims is unknown, we cannot know that common questions predominate over individualized ones, as required under Rule 23(b)(3).

Overly general class definitions also threaten the assurance that class members will receive fair and adequate representation. Such neutral representation depends, in large part, on the typicality of class representatives' claims. *See Amchem*, 521 U.S. at 626 n.20 ("The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a).") A broader class may bring a more wide-ranging set of claims than those presented to the district court. While this is always a risk in aggregate litigation, the drafters of Rule 23 wisely sought to minimize such deviations through encouraging specificity in certification orders. But the fact that the certified classes facially allow a broader swath of claims than those discussed by the district court "suggests both that the named plaintiffs' claims are not typical of those of the enormous class certified and that they could not adequately represent such a class." *Barney v. Holzier Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997).

## III.

When a district court has proffered an overly general class definition, an appropriate remedy may be to vacate the order and remand, rather than "flatly denying certification."

16

*In re Marriott Int'l, Inc. Consumer Data Sec. Breach Litig.*, 341 F.R.D. 128, 142 (D. Md. 2022) ("An overbreadth problem, however, 'can and often should be solved by refining the class definition[s] . . . .'" (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012))); *accord. Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022).

An appropriate class definition should provide proper detail to identify whether or not a prospective class member was injured and whether their claim coheres with the rest of the certified class. There is no brightline rule for how such a definition should read, and district courts have discretion in their phrasing.

Upon remand, the district court may also consider whether any recertification order should identify discrete subclasses. Rule 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." And the Supreme Court has held that district courts may "certify[] subclasses *sua sponte*." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 407-08 (1980); *see also* 7AA WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1790 (3d ed. 2024).

Subclasses may be appropriate when proposed classes sweep widely because overly general class definitions heighten the concern that members have "divergent interests." 1 MCLAUGHLIN ON CLASS ACTIONS § 4:45 (21st ed. 2024). Breaking down a broad class into subclasses can help ensure not only that common questions are properly defined and predominate within each subclass, but also that class representatives actually have claims typical of the subclass they purport to represent. *See* Fed. R. Civ. P. 23(a)(3). This helps avoid unnecessary "significant, fundamental, intraclass conflict" and the potential

17

subordination of some types of claims to others during litigation and/or settlement. 3 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 7:31 (6th ed. 2024).

Indeed, when such conflicts threaten Rule 23(a)(4)'s promise of fair and adequate representation, district courts are obligated to divide or decertify the class. *See id.*; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997). While a district court does not "bear the burden of constructing subclasses" in lieu of decertification, if it chooses to undertake that course *sua sponte* it must find that each subclass meets Rule 23's prerequisites individually. 3 NEWBERG & RUBENSTEIN, *supra*, § 7:30. Thus, subclassing involves a careful balancing of ensuring the homogeneity and numerosity of each subclass. *See* 32B AMERICAN JURISPRUDENCE 2D FEDERAL COURTS § 1718; *see also In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242, 249-50 (2d Cir. 2011). We offer subclassing not as a directive but as one example of the tools the district court may employ to achieve the proper specificity of a challenged policy and class contours necessary to ensure Rule 23 compliance.

## IV.

When properly crafted and certified, the class-action device can serve as an administrable vehicle favorable to the needs of all parties. State and federal laws are both sensitive to the plight of hourly-wage employees in America and to the value of each dollar to their households. Workers deserve every penny earned for the honest work they provide their employers, and aggregate litigation may often provide the best means through which to seek relief.

18

However, the class-action mechanism is a carefully constructed compromise in our legal system—one which Article III courts play a critical role in maintaining. A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982)); *see Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998) ("[L]itigation by representative parties adjudicates the rights of all class members."). And plaintiffs who could never have individually marshaled the resources or satisfied jurisdictional amount-in-controversy requirements may through aggregate litigation seek proper vindication in a court of law. *See* 28 U.S.C. § 1332(a), (d)(2). But, in exchange for this ability, parties must adhere to Rule 23's prerequisites and requirements. These requirements ensure that judicial resources are not wasted pursuing litigation that is aggregate only in theory. Without Rule 23, the most ill-defined and loosely constructed classes would become commonplace, all but ensuring that courts would be bogged down unknotting unnecessarily disparate claims. Our legal system has rightly spurned such a litigious prospect.

Our goal today is simply to ensure that the class-action train stays on the tracks. It is the district court's responsibility in the first instance to determine whether plaintiffs have met their burden to present a case properly amenable to class treatment. *Thorn*, 445 F.3d at 321-22. It would be premature for an appellate court to pass judgment on this question at this juncture. We thus vacate the certification order and remand to the district court for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

19