**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 24-1507**

─────────────

CLARENCE DAVIS,

Plaintiff - Appellant,

v.

CAPITAL ONE N.A.,

Defendant - Appellee.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:22-cv-00903-AJT-IDD)

─────────────

Argued:  March 19, 2025                       Decided:  August 25, 2025
                    Amended:  August 26, 2025

─────────────

Before BENJAMIN and BERNER, Circuit Judges, and FLOYD, Senior Circuit Judge.

─────────────

Affirmed by unpublished opinion.  Judge Berner wrote the opinion, in which Judge Benjamin and Judge Floyd joined.

─────────────

**ARGUED:**  James S. Wertheim, HQ FIRM, P.C., West Jordan, Utah, for Appellant. Jonathan S. Hubbard, TROUTMAN PEPPER LOCKE LLP, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Brittany N. Clark, HQ FIRM, P.C., Salt Lake City, Utah, for Appellant.  Robert A. Angle, Brooke M. Conkle, Jonathan M. DeMars, TROUTMAN PEPPER LOCK LLP, Richmond, Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

BERNER, Circuit Judge:

Clarence Davis received multiple prerecorded messages on his cell phone from Capital One seeking payment for a debt. Davis had never been a Capital One customer and had never consented to receive calls from Capital One. Davis's cell phone number previously belonged to someone else, a Capital One customer who had consented to receive calls from Capital One before falling delinquent on his account. Davis contacted Capital One and informed its representative that he was not a customer and that Capital One was calling the wrong person. Although Davis asked Capital One to stop calling, the prerecorded messages continued.

Davis then filed this class action suit against Capital One. He alleges that Capital One violated the Telephone Consumer Protection Act by leaving prerecorded messages on his cell phone without his consent. Davis moved for certification of a class of individuals who, like him, were not current Capital One customers but had nonetheless received prerecorded calls from Capital One. In his motion for class certification, Davis relied heavily on the testimony of an expert witness who had proposed a methodology to identify class members.

Capital One opposed class certification, principally on the grounds that members of the class could not be sufficiently ascertained and that individual questions predominate over common ones. Capital One also moved to exclude Davis's expert. The district court, applying Rule 702 of the Federal Rules of Evidence, granted Capital One's motion to exclude Davis's expert. The district court concluded that the expert's testimony was not based on reliable principles or methods. The district court then denied Davis's motion for

2

class certification after concluding that the proposed class failed to satisfy Federal Rule of Civil Procedure 23(b)(3)'s predominance requirement and this court's ascertainability requirement.

On appeal, Davis challenges both rulings. Because the district court did not abuse its discretion either by excluding Davis's expert or by denying his motion for class certification, we affirm.

## I.      Background

### A.      The Telephone Consumer Protection Act

In 1991, Congress enacted the Telephone Consumer Protection Act (TCPA) "to prevent abusive telephone marketing practices." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 648 (4th Cir. 2019). The TCPA "prohibited almost all robocalls to cell phones." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 615 (2020). When the law was passed, over 18 million Americans received unsolicited calls each day. *Id.* at 614. The TCPA is a strict liability statute, because of the recognition that "few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications." *Krakauer*, 925 F.3d at 656.

Davis sued under Section 227(b) of the TCPA which makes it unlawful "for any person within the United States . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed

3

to or guaranteed by the United States" without the prior consent of the called party. 47 U.S.C. § 227(b)(1). Calls made with the prior express consent of the called party are statutorily exempt from liability. *Id.* § 227(b)(1)(A).

### B.  Factual Background

In April 2021, a customer opened a credit card account with Capital One and gave Capital One consent to call his cell phone. That customer later relinquished his cell phone number, and the number was reassigned to Davis in March 2022.[1] The customer fell into delinquency on his Capital One credit card, and Capital One began calling the cell phone number that had been provided by the customer and later reassigned to Davis in an attempt to collect the debt. Davis never had a Capital One account and had never consented to receive calls from the company to his cell phone.

Capital One admits that it initiated debt collection calls to Davis on May 9, 10, 12, 13, 14, 15, and 18 of 2022 and left prerecorded messages on his voicemail on at least four occasions between May 9 and 14. On May 13, Davis called Capital One to notify the company that he was not a customer and that it was calling the wrong person. Davis asked the Capital One representative for Capital One to stop calling him. The Capital One representative told Davis that Capital One would stop calling but the representative wrote down Davis's number incorrectly. Thus, the prerecorded calls continued. Davis called Capital One again on May 18. As before, he informed the representative that Capital One

---

[1] For privacy reasons, Davis registered his cell phone under a pseudonym and he did not share his cell phone number with any businesses.

4

was calling the wrong person, and he asked not to be called. After the May 18 call, Davis received no more prerecorded calls from Capital One.

### C.    Procedural Background

In August 2022, Davis filed a class action lawsuit against Capital One in the United States District Court of the Eastern District of Virginia on behalf of himself and similarly situated persons who were not current customers of Capital One yet received unsolicited prerecorded messages from the company. Davis alleges that these calls violated the TCPA because they used an artificial or prerecorded voice and the recipients never consented to receive calls. Davis claims that the putative class members have received "tens of thousands" of robocalls from Capital One. J.A. 106. The proposed class is defined as:

> All persons or entities throughout the United States (1) to whom Capital One initiated a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Capital One (3) in connection with which Capital One used an artificial or prerecorded voice (4) from four years before the filing of certification.

J.A. 657. Because Davis filed suit in August 2022, the class included individuals that received robocalls between August 2018 and 2022, in accordance with the TCPA's four-year statute of limitations. 47 U.S.C. § 227.

Davis and Capital One engaged in extensive discovery and each retained experts to analyze the feasibility of identifying class members. Davis's expert Anya Verkhovskaya asserted that her proposed methodology made it possible to identify individuals to whom Capital One initiated prerecorded calls but who were not Capital One customers. Capital One's expert David Kalat attempted to discredit Verkhovskaya's methodology. Kalat's testimony criticized the methodology as infeasible and inaccurate. Kalat conducted an

analysis on a sample of 5,000 unique phone numbers provided by Capital One from which Verkhovskaya had identified 666 potential class members. Kalat found that of those 666 potential class members, over 75 percent were in fact Capital One customers.

Capital One moved to exclude Verkhovskaya's testimony on the basis that she was not qualified to serve as an expert. The district court noted that although Verkhovskaya described her proposed methodology to identify class members, she had never fully implemented it. *Davis v. Cap. One, N.A.*, Civil Action No. 1:22-CV-00903 (AJT/IDD), 2023 WL 6964051, at *8 (E.D. Va. Oct. 20, 2023). The district court was persuaded by Kalat's testimony and concluded that Verkhovskaya's methodology was unreliable. *Id.* at *9. The district court expressed concern that Verkhovskaya was not able to explain how she would eliminate non-class members, leaving only unproven methodology that "could potentially be employed at some point in the future, but with no objective measure of its accuracy in identifying class members." *Id.* at *8. The district court also expressed concern that a database upon which Verkhovskaya proposed to rely on in her analysis was unreliable for this purpose. *Id.* at *10–11.

After carefully reviewing the reports of both experts, the district court determined that Verkhovskaya's proposed methodology failed to identify proposed class members with "a sufficient—or any—degree of reliability or feasibility." *Id.* at *11. On the basis of this review, the district court deemed Verkhovskaya's expert testimony inadmissible under Federal Rule of Evidence 702. *Id.*

The district court next analyzed whether Davis's proposed class satisfied the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure:

6

numerosity, commonality, typicality, and adequacy. *Id.*; Fed. R. Civ. P. 23(a). Because Davis sought to certify a class under Rule 23(b)(3), "the questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The district court also considered this circuit's requirement for class certification, ascertainability. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). The district court ruled that the proposed class satisfied the numerosity, commonality, typicality, and adequacy requirements, but did not satisfy the requirements of predominance and ascertainability. *Davis*, 2023 WL 6964051, at *14–15.

In ruling on ascertainability, the district court concluded that Davis failed to meet his burden to show that class members could be "'readily identified' according to objective criteria in an 'administratively feasible' manner." *Id.* at *13.; *see Adair*, 764 F.3d at 358. For the same reasons the district court had found Verkhovskaya's proposed methodology infeasible and unreliable, the district court found her methodology unhelpful on the issue of ascertainability. The district court expressed concern that "the resulting group of individuals identified. . . [might contain] a large number of Capital One customers." *Davis*, 2023 WL 6964051 at *13. The district court thus denied Davis's motion to certify the class. *Id.* at *15.

Davis sought leave to file an interlocutory appeal of the district court's denial of class certification, which the district court denied. In lieu of trial, Capital One agreed to entry of judgment on the merits of Davis's case as an individual plaintiff and agreed to pay him $2,000 for violating the TCPA. After the district court entered final judgment, Davis

7

timely appealed the exclusion of his expert witness and the denial of his motion for class certification.

## II.      Analysis

This appeal presents two issues. First, whether the district court erred in excluding Davis's expert witness Anya Verkhovskaya. Second, whether the district court erred in denying Davis's motion for class certification. Because Davis relied almost exclusively on Verkhovskaya's testimony and methodology in seeking class certification, the two issues are closely linked. Yet we review each separately and review both under the deferential abuse of discretion standard. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 280 (4th Cir. 2021); *Adair*, 764 F.3d at 357.

### A.      Exclusion of Davis's Expert Witness

In reviewing the district court's decision to exclude Davis's proposed expert witness Anya Verkhovskaya, we are guided by Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, and by the decision of the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The "main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony." *Nease v. Ford Motor Co.*, 848 F.3d 219, 231 (4th Cir. 2017). *Daubert* recognized that the district court has a special obligation to act as a gatekeeper to "ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis*, 10 F.4th at 281 (alteration and emphasis in original) (quoting *Daubert*, 509 U.S. at 596). Where the admissibility of expert testimony is specifically challenged, Rule

8

702 "require[s] that the district court make explicit findings . . . as to the challenged preconditions to admissibility." *Id.* at 283.

District courts may consider a number of factors when determining the reliability of an expert's testimony, including whether the expert's theory or technique can be (and has been) tested, whether the theory or technique has been subjected to peer review and publication, the rate of error, and whether the theory or technique is generally accepted within the relevant community. *Daubert*, 509 U.S. at 593–94; *see also Sardis*, 10 F.4th at 283. This inquiry must focus on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42, 145 (1999) (applying *Daubert* to non-scientific expert witnesses). These factors are "flexible," and district courts have "broad latitude" to determine whether an expert's opinion is reliable. *Kumho Tire Co.*, 526 U.S. at 141–42.

Here, the district court properly exercised its discretion to exclude Verkhovskaya's expert testimony. Verkhovskaya outlined a four-part methodology for identifying whether Capital One had called a non-customer. First, she planned to analyze Capital One's records and records belonging to telecommunications carriers to determine which of Capital One's calls had been made to cell phones. Second, Verkhovskaya planned to use the Reassigned Numbers Database (RND) to identify whether Capital One initiated a call after a particular cell phone number had been reassigned. The "RND system securely houses US geographic and toll-free numbers that have been permanently disconnected (and thus possibly reassigned) and the date of the most recent permanent disconnection of each those numbers." J.A. 157. RND is relatively new, however, and its records only go back to

9

January 2021. Third, Verkhovskaya planned to use a data broker, PacificEast, to query the RND to determine whether and when a given number was disconnected and reassigned. Fourth, Verkhovskaya planned to implement a "historical reverse append" to identify names and addresses of potential class members, and then to subpoena telecommunications carriers to identify the owner of each number.[2]

Verkhovskaya tested her methodology on a random sample of 5,000 phone numbers identified by Capital One as having received prerecorded calls. Of these 5,000 numbers, Verkhovskaya identified 666 as belonging to potential class members because the numbers had been reassigned since they were initially provided to Capital One. Verkhovskaya never fully implemented her proposed methodology, however. She forwent entirely the fourth and final step, the reverse historical append. Verkhovskaya conceded that, in fact, she never implemented "most of the methodology described in [her] reports in this case." J.A. 274.

Capital One's expert David Kalat tested Verkhovskaya's methodology. His test showed that 75 percent of the 666 numbers Verkhovskaya identified appeared to belong to Capital One customers. Kalat's test further demonstrated that 89 percent of the 666 numbers identified had received prerecorded calls from Capital One before RND records ever became available. Significantly, Kalat pointed out that even Davis—the named plaintiff—would not have been identified as a potential class member through

---

[2] A reverse historical append involves inputting a phone number into a database to find out who it belongs to. This relies upon public records, utilities, customer service providers, and credit reporting agencies. When an individual shares his phone number with an entity, such as a business rewards program, that entity often sells the customer's number to data brokers which then make that number searchable.

Verkhovskaya's proposed methodology because he had not registered his cell phone number under his own name but had rather used a pseudonym.

The district court thus had ample bases to question the reliability of Verkhovskaya's testimony. First, she admitted that she never fully tested her own methodology. Moreover, Capital One submitted evidence to show that two of the third-party entities upon which Verkhovskaya proposed to rely doubted whether they could reliably produce the requisite data. The RND administrator stated in a declaration that "[a]lthough the RND contains all reported disconnect dates, the disconnect dates are confidential and not publicly accessible through the RND public query interface." J.A. 181. Verkhovskaya also proposed using PacificEast to query the RND and conduct a reverse historical append. According to PacificEast, results of its queries "are inherently ambiguous and indefinite with regard to identifying a date of disconnection." J.A. 375. With respect to the reverse historical append, a PacificEast employee stated in a declaration that "determining definitively whether, and the dates, a particular person subscribed and/or stopped subscribing to or using an input telephone number, cannot reliably be achieved using the . . . service PacificEast provides." J.A. 376.

The district court's conclusion that Verkhovskaya's testimony was not the product of reliable principles and methodology was thus well supported. Verkhovskaya's failure to fully test her methodology on the sample provided by Capital One calls into question its reliability. We also agree with the district court that the high error rate Kalat identified also "weighs heavily against the admissibility of Verkhovskaya's expert opinion." *Davis*, 2023 WL 6964051, at *11. Davis failed to rebut Capital One's challenges to the reliability of

11

Verkhovskaya's testimony. *Id.* at \*10 Having carefully reviewed the experts' reports, we discern no abuse of discretion by the district court in excluding Verkhovskaya as an expert witness.

### B.      Class Certification

Davis also challenges the district court's denial of class certification. A district court abuses its discretion when it "materially misapplies the requirements of Rule 23" or clearly errs in its factual findings or legal analysis. *Stafford v. Bojangles' Rests., Inc.*, 123 F.4th 671, 678 (4th Cir. 2024) (quoting *Adair*, 764 F.3d at 357). The district court found that the proposed class failed the requirements of ascertainability and predominance. *Davis*, 2023 WL 6964051, at \*12–15. Because we conclude that the district court did not abuse its discretion in finding that the proposed class was not sufficiently ascertainable, we decline to reach the question of whether the district court properly concluded the proposed class also failed the predominance requirement.

Our circuit precedent requires, in addition to the requirements listed in Federal Rule of Civil Procedure 23, that the members of a proposed class be "readily identifiable." *Adair*, 764 F.3d at 358 (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)). To satisfy this ascertainability requirement, the district court must be able to "readily identify the class members in reference to objective criteria" and it must be "administratively feasible" for the court can do so. *Id.*

Beyond his reliance on Verkhovskaya's expert reports and testimony, Davis put forward little explanation of how the members of the proposed class could be ascertained. Therefore, our conclusion that the district court did not abuse its discretion in excluding

12

Davis's expert also supports our conclusion that the district court did not abuse its discretion in denying Davis's motion for class certification. Davis contends that the district court improperly required the identification of *all* the members of the class at the time of certification. Not so. The district court expressly rejected this approach. *Davis*, 2023 WL 6964051, at \*12. The district court concluded that Davis failed to identify objective criteria that would allow members of the proposed class to be readily identified "without extensive [and] individualized fact-finding or 'mini-trials." *Id.* (quoting *Adair*, 764 F.3d at 358) (internal citations omitted). Because this conclusion was supported by the evidence, we hold the district court did not abuse its discretion in denying Davis's motion for class certification.

## III.    Conclusion

For the reasons set forth above, we affirm the order of the district court in full.

*AFFIRMED*